## In re Anonymous No. 130 D.B. 91

Disciplinary Board Docket no. 130 D.B. 91.

*Hearing Committee,* December 21, 1992—

### STATEMENT OF THE CASE

The Office of Disciplinary Counsel (petitioner) has charged [    ], Esq. (respondent) with violation of Rule of Professional Conduct 1.15(b). On October 7, 1991 the petition was filed; on November 27, 1991 the respondent accepted service of the petition. The respondent did not file an answer to the petition. On December 26, 1991 the petition was referred to Hearing Committee [    ]. On March 24, 1992 a hearing was held in the District [    ] Office of the Disciplinary Board of the Supreme Court of Pennsylvania. At the hearing, the petitioner and the respondent entered into and submitted to the committee a stipulation of fact consisting of 14 points. The hearing proceeded. The petitioner's case consisted of the stipulation, the testimony of three wit-

nesses and Exhibits P-1 through P-16, inclusive. The respondent's case consisted of the respondent's testimony and Exhibits D-1 through D-3, inclusive.

Following testimony and argument, the committee found that the respondent violated R.P.C. 1.15(b), one member dissenting. The committee deemed an informal admonition to be an appropriate sanction and entered this finding. Both the petitioner and the respondent accepted the committee's recommendation. In accordance with Disciplinary Board Rule 89.181 the committee proceeded by abbreviated procedure.

By order dated June 30, 1992 the Disciplinary Board remanded the matter to the committee, directing the submission of briefs, the preparation of a transcript and the preparation and submission of a Hearing Committee report to include findings, legal conclusions and recommendation.

## FINDINGS OF FACT

(1) The respondent is an attorney, having been admitted to practice law in the Commonwealth of Pennsylvania on or about October 14, 1977.

(2) The respondent maintains professional offices located at [ ].

(3) On or about May 22, 1990, [ ] (decedent) died testate; the decedent was a resident of [ ] County.

(4) On or about June 13, 1990 [A], the decedent's son, was appointed by the Register of Wills of [ ] County to be the executor of his mother's estate.

(5) At the time of the decedent's death, [A] was separated from his wife, [B].

(6) [A] and [B] had been living apart since 1986.

(7) [B] resided in what was her and [A's] marital home prior to the date of their separation in 1986.

(8)  [A] resided in his mother's home.

(9)  The respondent represents, and has represented since 1986, [B] in divorce and other domestic proceedings in the Court of Common Pleas of [ ] County.

(10)  During the course of the respondent's representation of [B], [B] delivered to the respondent the decedent's will, stock certificates in the decedent's name, a deed to real estate owned by the decedent during her lifetime and a key to the safety deposit box in the decedent's name.

(11)  All of the property that [B] delivered to the respondent was owned by the decedent in her own name during her lifetime.

(12)  As a matter of law, after the decedent's death, the ownership and/or the right of possession to the said property was in the decedent's estate.  (20 Pa.C.S. §301.)

(13)  [C], Esq., a member of the [    ] County Bar, represented [A's] capacity as executor of the decedent's estate.

(14)  From on or about late May 1990 to on or about late November 1990, both [C] and [A] made numerous requests and demands on the respondent for the release of the decedent's property so that the decedent's property would be available to settle the decedent's estate.

(15)  On one occasion after the decedent's death; namely, in May 1990, the respondent acknowledged to [C's] office that the respondent had the property and that it could be released to [C]. [C] confirmed this conversation by letter dated May 31, 1990.

(16)  When [A] went to the respondent's office to retrieve the property, the respondent refused to release the property to him.

(17)  After the respondent refused to release the property to [A], [C] made a written request dated June 5,

1990 to the respondent for the release of the property belonging to the decedent's estate.

(18) The respondent failed and/or refused to reply to [C's] letter dated June 5, 1990.

(19) The respondent did release the decedent's will.

(20) After the respondent had released the decedent's will, and no other property, and failed and/or refused to respond to [C's] letter dated June 5, 1990, [C] made another written request dated June 26, 1990 for the release of the property belonging to the decedent's estate.

(21) The respondent failed and/or refused to reply to [C's] letter dated June 26, 1990.

(22) The respondent did not release any further property belonging to the decedent's estate following his receipt of the letter dated June 26, 1990.

(23) As a result of the respondent's failure and/or refusal to reply to her letter dated June 26, 1990, and refusal to release the property in question, [C] made a written request dated July 27, 1990 for the release of the property belonging to the decedent's estate.

(24) On or about July 30, 1990 [C's] office received a telephone message from the respondent's office.

(25) The telephone message from the respondent's office indicated that the respondent would release the property remaining in his possession, but belonging to the decedent's estate.

(26) As a result of the respondent's message to [C], [A] went to the respondent's office to retrieve the property belonging to the decedent's estate.

(27) When [A] went to the respondent's office to retrieve the property, the respondent refused to release the property to him.

(28) As a result of the respondent's continuing failure to respond to her written requests and the respondent's

refusal to release the property in question, [C] filed a petition in the Orphans' Court of [    ] County on or about September 14, 1990.

(29) The petition filed by [C] on or about September 14, 1990 requested that the court direct the respondent to release the property belonging to the decedent's estate.

(30) After [C] filed her petition in the Orphans' Court of [    ] County, the court entered both a preliminary decree and a citation directing the respondent to show cause why he should not release the property in question.

(31) By letter dated September 17, 1990, [C] provided the respondent with copies of the petition, the preliminary decree and the citation.

(32) The respondent did not file an answer to the petition filed by [C].

(33) On or about October 24, 1990 [C] caused the said petition to be listed for a hearing in the Orphans' Court of [    ] County.

(34) On or about November 24, 1990, at a hearing held in the [A and B] domestic matters, the respondent delivered to [C] the stock certificates belonging to the decedent's estate.

(35) The respondent admitted that he did not contest the allegations in the petition filed by [C] in the Orphans' Court of [    ] County.

(36) The respondent admitted that he never considered the property in question to be marital property and knew that the property in question was owned by the decedent; however, he believed that he could obtain a tactical advantage in the domestic relations litigation if he could retain the property pending the master's hearing on the issue of equitable distribution between [A] and [B].

(37) In a letter dated January 8, 1991 addressed to the petitioner, the respondent asserted that [A] had engaged

in fraudulent behavior with regard to the domestic relations litigation.

(38) In a letter dated January 8, 1991 to the petitioner, the respondent asserted that [C] had engaged in fraudulent conduct concerning [A's] representations with regard to the inventory and appraisement forms filed for purposes of determining the issue of equitable distribution.

(39) The respondent admitted at the committee hearing that both inventory and appraisement forms filed by [A] had been filed prior to the death of [A's] mother and because of this chronology, the property would not have had to have been listed in the inventory and appraisement forms.

(40) The respondent was experienced in domestic relations litigation.

(41) The respondent knew that the property in question was not marital property and that to assert to the contrary was error. (23 Pa.C.S. §3501; *Diamond v. Diamond*, 360 Pa. Super 101, 519 A.2d 1012 (1987).)

(42) The respondent admitted that he never attempted to enter the decedent's safety deposit box; the respondent admitted that he never attempted to determine the contents of the decedent's safety deposit box.

(43) The respondent admitted that he could have photocopied the documents in his possession, thereby releasing the original to the decedent's estate at the time that [C] had made her first written demand upon him.

(44) The respondent admitted that he told [B] that he would keep the property in question and that he would take the necessary steps to protect the property to which she was entitled.

(45) Since his admission to the bar in 1982 the respondent has been a hard-working and reputable member of the bar.

(46) The respondent has never been arrested or convicted of a criminal offense.

(47) Other than the action presently under consideration, the respondent has not been the subject of any action brought by the Office of Disciplinary Counsel.

## DISCUSSION

This matter arises out of two distinct, but related, legal proceedings in which the respondent was involved. The proceedings, commenced in the Court of Common Pleas of [  ] County, were *[A] v. [B]* (no. [  ]) and the *Estate of [Decedent]* (no. [  ]). The [A and B] case was a bitterly contested domestic relations dispute in which the respondent represented [B]. The [decedent] case was an estate in which [A], the husband of [B], was named executor.

The respondent was an attorney, highly experienced in domestic relations litigation. This litigation constituted the bulk of the respondent's active practice. As the so-called "scorned woman," [B] was angry and extremely anxious to secure her legitimate interests and entitlements in the marital property and to secure for herself and her children adequate support and maintenance.

The respondent, suspicious of the chicanery which he found to be common in domestic relations litigation, perceived [A] as a duplicitous person not to be trusted and whose every action should be strictly scrutinized.

In representing [B], the respondent was extremely effective and his able advocacy resulted in a decision very favorable to his client. His vigilant and aggressive representation of [B] was entirely consistent with his duties and responsibilities as an attorney.

It was this same zeal, exercised to an inappropriate degree by the respondent, however, that resulted in the charged violations. R.P.C. 1.15 provides:

"Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

In order to establish a violation of R.P.C. 1.15(b) three elements must coalesce: (1) that the attorney has possession of property belonging to his client or a third person; (2) that the attorney refuses to promptly deliver the property to his client or a third person; and (3) that there is neither authority nor an agreement permitting the attorney to retain the property.

While arguments based on the facts and inferences drawn from the facts may differ, the facts themselves are not in material dispute and indicate a violation of R.P.C. 1.15(b). On May 22, 1990 [decedent], [A's] mother, died testate. [A] was named executor of the estate. In late May 1990 the respondent received from [B] various items of property belonging to the [decedent] estate; namely, [decedent's] last will and testament, [decedent's] stock certificates, the original deed to [decedent's] real estate and the key to [decedent's] safe deposit box. These items, clearly and unequivocally the property of the [decedent] estate, were necessary to complete probate.

From May 1990 to November 1990 [C], representing [A] as executor of the [decedent] estate, made repeated requests of the respondent to release control over those items which belonged to the [decedent] estate. The respondent repeatedly refused [C's] request as a result of

which [C] was compelled to file a petition in the Orphans' Court of [    ] County, seeking to compel the respondent to release the property. The respondent did not answer the petition; however, on or about November 28, 1990, the respondent did turn over these items to [C].

In applying the facts to R.P.C. 1.15(b) we find that the petitioner has more than satisfied its burden of proof. First, the respondent came into possession of the property belonging to the [decedent] estate. Second, despite repeated and entirely legitimate demands to do so, the respondent, over a period of six months, refused to release the property belonging to the [decedent] estate. Third, there was no authority entitling or permitting the respondent to retain the property belonging to the estate.

The case *In re Anonymous No. 3 D.B. 86,* 50 D.&C.3d 360 (1987), is instructive both in considering the violation and the penalty which would be appropriate under the circumstances. In *No. 3 D.B. 86,* the respondent refused to release savings certificates after having been advised by both interested parties that all of the conditions for such release had been met. The respondent refused to release the certificates with neither justification or excuse. The committee found such conduct to be violative of an attorney's duty not to withhold property of another.

The respondent has advanced arguments in justification of his conduct. We do not find the arguments persuasive. The respondent's first argument is that the property was marital property and, as such, was subject to the then-pending action for equitable distribution as between [A] and [B]. The property, however, was clearly not marital property under the Pennsylvania Divorce Code. The respondent, knowledgeable and experienced in the law of domestic relations, was obviously aware that such a position vis-a-vis the property had no basis in law. The respondent admitted this at the hearing.

The respondent's second argument is that he was justified in retaining the property because [B] had instructed him to keep the property. This argument is belied by the respondent's responses to the committee's interrogation wherein the respondent admitted telling [B] that he would protect any and all rights and interests that she might arguably have in the property. Even if [B] had directed the respondent to retain the property, this, without more, would not have justified the respondent's refusal to release the property. Obedience to a client's instructions does not insulate an attorney from disciplinary action, especially, if by acquiescing in the client's instructions, the attorney violates either the law or a Rule of Professional Conduct. In such circumstances the attorney is bound by the law and the rules of his profession and not by the client's directives.

The respondent's third argument is that, as stated in his letter dated January 8, 1991, he was compelled to retain the property because both [C] and [A] had knowingly filed false and inaccurate inventories and appraisements in the domestic relations litigation. This argument collapses under the weight of the record. It is true that the inventories and appraisements filed by [C] and [A] did not list property belonging to the [decedent] estate in which [A] might have had an interest. The reason for this omission, however, is crystal clear: The inventories and appraisements were filed prior to [decedent's] death at a point in time when [A] had neither right, title nor interest in the property and, therefore, had no obligation whatsoever to include the property in the inventory and appraisements.

The respondent's fourth argument is that his conduct should be excused because it was the result of "poor judgment." The respondent's reliance on such an excuse is entirely misplaced and is contradicted by his own pro-

fessional abilities and experience. We are not dealing with an inexperienced or incompetent attorney; rather, we are dealing with a skilled advocate with extensive domestic relations experience and obvious familiarity with the intricacies of the Pennsylvania Divorce Code.

The committee is aware that this is the first petition brought against the petitioner by the Office of Disciplinary Counsel and that, since his admission to the bar, the respondent has conducted himself in a manner entirely consistent with the rules and regulations of his profession. Further, the committee is mindful of the personal tragedy suffered by the respondent in the untimely death of his wife, a tragedy that might well have clouded his judgment. Further, the committee recognizes that the respondent's conduct was, in no way, motivated by malice or a malign intent. Nevertheless, the committee cannot ignore the facts which were clearly established by the petitioner that the respondent, with neither justification of excuse, retained property belonging to another for a period of six months in violation of R.P.C. 1.15(b).

In *No. 3 D.B. 86,* while the committee recommended the sanction of an informal admonition, the Disciplinary Board rejected the recommendation and imposed the more severe sanction of a private reprimand. The Disciplinary Board cited the respondent's resentful attitude and inappropriate behavior as the reasons for the imposition of the more severe penalty. In the matter sub judice, however, this was not the case as the respondent conducted himself with dignity, courtesy and professionalism throughout the proceedings.

To conclude, there being no legitimate justification or excuse for his conduct, the respondent's conduct constituted a violation of R.P.C. 1.15(b) and that the sanction imposed hereinafter is appropriate under the circumstances.

## CONCLUSION OF LAW

(1) The respondent has violated R.P.C. 1.15(b).

(2) The disciplinary sanction as recommended hereinafter is appropriate under the circumstances.

## RECOMMENDATION

(1) It is the recommendation of the committee that the respondent receive an informal admonition.

## OPINION OF DISSENTING MEMBER

[    ], *Chairman Designate,* December 21, 1992 — On March 24, 1992 a disciplinary proceeding against [respondent], Esq., commenced before the undersigned together with recently retired Chairman, [    ], Esq. and [    ], Esq., Associate Member. In his opening statement, prosecuting counsel, [    ], Esq., Disciplinary Counsel in charge of District [    ], told the panel that the proceedings we were about to hear were not a "license-threatening case" and that it may be a situation where an attorney was playing "hardball," not necessarily engaging in unethical conduct.

With this opening statement in mind, we were apprised of the following situation. The chief complaining witness, [A], was the subject matter of a bitter marital dispute between himself and [respondent's] client. The aspects of the marital "battle royale" that were presented before the board wherein it was alleged that the respondent was guilty of unethical conduct concerning the release of certain property of [A's] mother's estate, including a deed to his mother's home as well as several stock certificates and certain keys.

We learned that in December 1986 [A] had walked out on his wife and two children for another woman;

had refused to support his wife and children, abandoning them both physically and financially. As the result, he was the subject matter of a series of support actions brought on behalf of [B] and her minor children by the respondent.

[A] attempted to obtain a divorce on the grounds of indignities and the Court of Common Pleas sustained a recommendation of the master denying the divorce.

There was also a question of a substantial inheritance due [A] and its failure to be included in the inventory submitted to the equitable distribution master which ultimately at trial of the equitable distribution matter proved to be a substantial factor in division of the marital assets in which [A] proceeded to receive substantially less than his estranged wife. In fact, the equitable distribution master commented upon [A's] lack of candor in failing to make these disclosures.

During the course of the marital litigation, [A] was represented by [C], Esq. who, at the same time that she was in private practice also served as an assistant district attorney for the county in which the litigation proceeded. I find this to be an interesting fact since [respondent's] client was prosecuted, tried and ultimately acquitted for allegedly assaulting her husband by the same district attorney's office with which [C] served. In addition, there were other quasi-criminal proceedings involving the parties.

There was extensive testimony concerning the effect of the failure to properly release certain information, including the items listed hereinabove, but I recall no testimony that any harm was done as a result of the failure to release these documents, nor was there any testimony that alternate measures were not available in order to offset any potential damage which might have been done.

Finally, I note with much chagrin that evidently no consideration was given to the fact that the respondent

had suffered a tragic personal loss during the intervening period of time when his complained-about conduct took place by reason of the tragic death of his wife in a boating accident. Unfortunately, at the time of the writing of this dissent, I do not have available to me the verbatim stenographic notes of testimony, and have relied on my handwritten notes.

I would direct the Disciplinary Board to the six-page letter that was received by Disciplinary Counsel on or about January 8, 1991 and admitted into evidence as P-12, which fairly summarizes the respondent's view of the entire proceedings, which closely mirror my own. Under the circumstances, I must respectfully dissent from a finding of any unethical conduct and if the board is to conclude that some unethical conduct did take place, I believe it is excused by reason of the serious and tragic circumstances under which the respondent was practicing at the time of the complained-of offense. It is curious to me that the chief complaining witness sought redress through the disciplinary network only after successful litigation wherein it was clearly revealed that he was less than candid with the courts and quasi-judicial officers of this Commonwealth, and received a substantially smaller portion of the marital estate.

I would find no violations of R.P.C. 1.15(b) and 8.4(d) and would recommend if the board would conclude otherwise that the least of disciplinary penalties be imposed, that of informal admonition.

## ORDER

And now, May 10, 1993, upon consideration of the supplemental report of Hearing Committee [    ] and opinion of dissenting member filed December 21, 1992, it is hereby ordered that the charges filed against [respondent], docketed at no. 130 D.B. 91, be dismissed.